UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI A. HALL,

        Plaintiff,

v.

        Case No. 1:13-cv-587
        Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on September 26, 1961 (AR 201).[1] She alleged a disability onset date of February 15, 2010 (AR 203). Plaintiff completed the 11th grade (AR 197). She had previous employment as an attendant/sale clerk, a home health aide, a housekeeper and a waitress (AR 197). Plaintiff identified her disabling conditions as a herniated disc, neuropathy, chronic back spasms and migraines (AR 196). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits on May 10, 2012 (AR 10-22). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of February 15, 2010 and that she met the insured status requirements under the Act through December 31, 2014 (AR 12). At the second step, the ALJ found that plaintiff had a severe impairments of: degenerative disc disease of the lumbar spine; bilateral carpal tunnel syndrome; migraine headaches; depression, and anxiety (AR 12). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 13). Specifically, plaintiff did not meet Listings 1.02 (major dysfunction of a joint(s) (due to any cause)), 1.04 (disorders of the spine), 12.04 (affective disorders) or 12.06 (anxiety related disorders) (AR 13-15).

The ALJ decided at the fourth step that:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she is able to lift and/or carry up to twenty pounds occasionally. She is able to lift and/or carry up to ten pounds frequently. She is able to climb ladders, ropes, and scaffolds occasionally, and she is able to climb ramps and stairs frequently. The claimant is able to balance, stoop, kneel, crouch, and crawl frequently. She must avoid concentrated use of moving machinery and concentrated exposure to unprotected heights. The clamant is able to perform simple, routine, and repetitive tasks. She is limited to occasional interaction with the public and coworkers.

(AR 16). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 21).

At the fifth step, the ALJ determined that plaintiff could perform a range of unskilled light work in the national economy (AR 21-22). The work included the following jobs in the

regional economy (defined as the lower peninsula of Michigan): sorter (23,900 jobs); packager (25,000 jobs); and storage leasing agent (13,000 jobs) (AR 22). Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from February 15, 2010 (the alleged onset date) through May 10, 2012 (the date of the decision) (AR 22).

### III. ANALYSIS

Plaintiff raised one issue on appeal:

**The Commissioner erroneously failed to give appropriate weight to the opinions of the treating sources and misapplied the law.**

Plaintiff contends that the ALJ failed to give appropriate weight to the opinions of her treating physician, Raymond Tracy, D.O. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Dr. Tracy prepared a "Lumbar spine residual function capacity questionnaire" dated June 14, 2011 (AR 639-43). The doctor opined that plaintiff had extreme limitations: she could walk less than 1/2 of a block; sit for no more than 45 minutes; stand for no more than 15 minutes; and in an eight-hour workday could only sit/stand/walk for less than two hours (AR 641). Plaintiff would need to walk around every 30 minutes and spend 10 minutes walking (AR 641). Plaintiff required a sit/stand/walk at will option at work, and would need to take unscheduled breaks (AR 641). In addition, plaintiff could never lift 10 pounds and only rarely lift less than 10 pounds (AR 641). While plaintiff could occasionally twist, stoop and bend, she could only rarely climb stairs, and never crouch, squat or climb ladders (AR 642).

Dr. Tracy supported his opinion by citing clinical findings such as an MRI of the LS spine, x-ray of chest and back, EMG and CT scan (AR 639). The doctor identified positive objective signs for pain including reduced range of motion, abnormal gait, sensory loss, tenderness,

6

swelling, muscle spasm, muscle weakness, weight change and impaired sleep (AR 640).  The doctor also noted that plaintiff has increased depression due to her physical limitations and has problems with her asthma due to heat and allergies (AR 643).

The ALJ addressed Dr. Tracy's opinion as follows:

> In June 2011, Raymond Tracy, D.O., a treating physician, completed a medical source statement on behalf of the claimant. (Exhibit 13F). He noted his frequency of contact with the claimant was greater than 5 years, but the medical evidence of record does not contain treatment records from his office.  Dr. Tracy noted that the claimant's symptoms would frequently interfere with her concentration and attention.  Dr. Tracy opined that the claimant's ability to sit and stand, lift and carry weight, and perform postural activities was limited.  Dr. Tracy noted that the claimant's use of her hands, fingers, and arms was limited.  Finally, he opined that the claimant would likely miss more than four workdays per month and she would require frequent unscheduled rest breaks. (*Id*).  Dr. Tracy's opinion is inconsistent with the claimant's activities of daily living, the most recent MRI results, Dr. Simpson's findings, and the opinions of Dr. Zimmerman and Dr. Kozachik. (Exhibits 5A, 12F, and 18F).  I assign little weight to Dr. Tracy's opinion.

(AR 19).

The ALJ also reviewed the opinion of plaintiff's neurosurgeon, Eric Zimmerman, M.D.  Dr. Zimmerman performed an L5-S1 microdisectomy surgery on plaintiff on September 28, 2010 (AR 17, 475-76).  In a note dated November 12, 2010, Dr. Zimmerman opined: that plaintiff was doing well; that her sciatica was gone; that she had some muscular back discomfort; that she could return to work in 2 or 3 months; that she had good relief of her sciatica; and "[a]t this point, she needs to wear a corset for work only lifting as she feels tolerated according to her muscular back discomfort" (AR 602). The ALJ addressed Dr. Zimmerman's opinion regarding plaintiff's post-operative condition as follows:

> In November 2010, Dr. Zimmerman opined that the claimant would be able to work two to three months following her surgery. (Exhibit 8F) [AR 602].  This statement is consistent with the objective medical evidence of record; specifically the most recent MRI that shows no new significant findings. (Exhibit 18F) [AR 689-90]. This

> is also consistent with Dr. Simpson's findings and the claimant's self-reported activities. (Exhibit 12F) [AR 633-37]. I assign great weight to Dr. Zimmerman's opinion.

(AR 18-19). The MRI referred to by the ALJ, taken on March 27, 2012, indicated that plaintiff's lumbar spine and cervical spine were generally unremarkable (AR 689-90).

The ALJ also referred to opinions of Michael Simpson, M.D., and Jean Kozachik, M.D. Dr. Simpson, a consultative examiner, assessed plaintiff's physical abilities in March 2011 (AR 18). The ALJ summarized Dr. Simpson's conclusions in pertinent part as follows:

> Dr. Simpson noted that the claimant used a cane to ambulate and she walked with a mild limp on the left. Musculoskeletal examination revealed no joint instability, enlargement, or effusion. Grip strength was mildly diminished and dexterity was unimpaired. She was able to pick up a coin, button clothing, and open a door. She had no difficulty getting on and off the examination table. She had mild difficulty heel and toe walking, and mild to moderate difficulty squatting. She had mild limitation with dorsolumbar spine range of motion. Neurological examination was normal. Dr. Simpson noted that although the claimant reported knee pain, she had full range of motion of the bilateral knees. Regarding the claimant's back, he did not find any evidence of ongoing nerve impingement. He also noted that the claimant appeared to be able to ambulate without the use of a cane.

(AR 18, 633-37).

The ALJ summarized Dr. Kozachik's opinion as follows:

> In March 2011, Jean Kozachik, M.D., a state agency reviewing physician, completed a medical source statement regarding the claimant's functioning. (Exhibit 5A). Dr. Kozachik opined the claimant is able to work at the light exertional level with some postural and environmental limitations. (*Id*). I assign great weight to Dr. Kozachik's opinion due to the same considerations as discussed with Dr. Zimmerman's opinion.

(AR 19).

In addition, the ALJ found that plaintiff engaged in a number of daily activities which were inconsistent with a disabling condition:

> I have accounted for the claimant's back pain by limiting her to light work. Further, the claimant's residual functional capacity is not based upon the claimant being pain-free, but rather is based on her ability to do work activities on a sustained basis despite limitations, such as pain, from her impairments. Moreover, I find the credibility of the claimant's allegations eroded given her self-reported functional abilities. The claimant reported minimal difficulties with performing activities of personal care. She reported being able to go grocery shopping, prepare simple meals, and perform household chores. (Exhibit 7E) [AR 243-50]. She reported being able to put wood into a wood stove. (Exhibit 11F) [AR 628]. The claimant testified that she lives with a special needs daughter, for whom is able to provide care. Further, she testified that she is going to be paid by the State of Michigan for caring for her daughter. She testified that she cleans her church on a weekly basis and she testified that she cleans someone's home on a bi-monthly basis. I find these abilities inconsistent with the claimant's allegations of disabling pain.

(AR 18).

As an initial matter, the ALJ declined to adopt Dr. Tracy's opinion in part due to the lack of treatment records from the doctor's office to substantiate his RFC statement. Contrary to the ALJ's finding, plaintiff points out that Dr. Tracy is the supervising physician of Brad Bliss, PAC, of Wellston Medical Center, and that the record includes treatment records from that office (AR 352-417, 474-537, 614-25, 655-68).[2] Rather than address an apparent error by the ALJ in evaluating the Dr. Tracy's opinion, defendant takes the position that "the ALJ considered the treatment records from Dr. Tracy's practice." Defendant's Brief at p. 6.

While it is true that the ALJ addressed PAC Bliss' treatment of plaintiff (e.g., by noting that throughout 2010, plaintiff treated with Mr. Bliss for pain management as well as her other severe impairments (AR 17)), the ALJ did not consider these records as providing support for Dr. Tracy's opinion. It appears that the ALJ rejected the doctor's opinion in part because of the purported lack of treatment records. *See Gayheart*, 710 F.3d at 375. However, in this instance, the

---

[2] For example, the Court notes that plaintiff's medical record for her September 2010 surgery, including a pre-surgery internal medicine consulting, listed the primary care physician as "Raymond Tracy, DO - (Wellston)" (AR 592-97).

ALJ's error was harmless. Even if the Court were to assume that Dr. Tracy's opinion was supported by clinical and laboratory findings in the doctor's treatment records, the ALJ properly discounted the doctor's opinion because it was found to be inconsistent with other substantial evidence in the record. *See Gayheart*, 710 F.3d at 375. The other evidence included Dr. Zimmerman's opinion, Dr. Simpson's opinion, Dr. Kozachik's opinion, the more recent MRI results, and plaintiff's self-reported activities.

The ALJ chose to give greater weight to the opinion of another treating physician, plaintiff's neurosurgeon, Dr. Zimmerman. It is the function of the Commissioner to resolve conflicts in the medical evidence. *See King v. Heckler*, 742 F.2d 968, 974 (6th Cir.1984). An ALJ has good cause to reject the opinion of one treating physician where there were contrary opinions of other treating physicians supported by objective medical evidence. *Milam v. Bowen*, 782 F.2d 1284, 1287 (5th Cir. 1986). *Cf. Price v. Chater*, No. 96-6395, 1997 WL 219754 at *1 (6th Cir. April 30, 1997) (it is not the duty of the courts to resolve a conflict between a claimant's treating physicians).

In addition, the ALJ found that plaintiff had the ability to perform a number of daily activities, including caring for her special needs daughter and cleaning for others. "An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters*, 127 F.3d at 532. While plaintiff may not have engaged vigorously in all of these activities, such endeavors are not indicative of an invalid, incapable of performing the types of work identified by the ALJ. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and

playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability).

Under these circumstances, the ALJ's error with respect to the evaluation of Dr. Tracy's opinion was harmless. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). "When 'remand would be an idle and useless formality,' courts are not required 'to convert judicial review of agency action into a ping-pong game.'" *Kobetic v. Commissioner of Social Security*, 114 Fed. Appx. 171, 173 (6th Cir. 2004), *quoting NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Accordingly, plaintiff's claim of error will be denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: September 22, 2014                        /s/ Hugh W. Brenneman, Jr.
                                                 HUGH W. BRENNEMAN, JR.
                                                 United States Magistrate Judge